UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 25-cv-21635-WILLIAMS/LETT

PNC BANK, N.A.,

      Plaintiff,

v.

DOLCE MARKETING CORP., *et al.,*

      Defendants.

_____/

## REPORT AND RECCOMENDATIONS

THIS MATTER is before the Court upon the Honorable Kathleen M. Williams' Order Referring Motion to Magistrate Judge, referring Plaintiff PNC Bank, N.A.'s Motion for Entry of Final Default Judgment Against Defendants, Dolce Marketing Corp., and Nayvi Alberti (the "Motion") [ECF No. 18] to the Undersigned for a report and recommendation. *See* ECF No. 19. Having reviewed Plaintiff's Motion, the record, and relevant legal authorities, for the reasons provided herein, it is recommended that Plaintiff's Motion for Default Judgment be granted.

## FACTUAL BACKGROUND

Plaintiff, a National Banking Association, and Defendant Dolce Marketing Corp. ("Dolce") entered into the Small Business Line of Credit Agreement (the "Agreement") on or about December 6, 2022. Compl. ¶ 10; Compl., Ex. B. As part of the Business Loan Application (the "Application"), Ms. Alberti jointly and severally guaranteed, and became surety for, all Obligations (as that term is defined in the

Application) of Dolce to PNC (the "Guaranty"). Compl. ¶ 9; Compl., Ex. A. Alberti is the sole officer of Dolce. Mot. at 8; Mot., Ex. B. The Application, Agreement, and Guaranty constitute a lending agreement pursuant to which Dolce borrowed up to $95,000.00 through a line of credit with PNC. Compl. ¶ 11. The Agreement provides that Dolce would be in default thereof if, among other things, Dolce failed to make any payment when due. Compl. ¶ 14; Compl., Ex. B, ¶ 17. The Agreement further provides that, in the event of a default, PNC has the right to: (i) declare the entire outstanding principal, unpaid interest and charges under the Loan Documents to be immediately due and payable to PNC; (ii) increase the interest margin up to 5 percentage points (5.0%) over the variable interest rate on the line of credit; and (iii) require that Dolce pay costs incurred by PNC in the collection of the outstanding amounts, including attorneys' fees and court costs. Compl. ¶ 15; Compl., Ex. B ¶ 18.

Dolce failed to timely make the required payments when due under the Agreement. Compl. ¶ 16. Accordingly, on October 11, 2024, PNC sent Dolce a Demand for Payment Letter informing Dolce that it was in default under the Agreement, and demanding repayment of the full outstanding amount of the Line of Credit. Compl. ¶ 17; Compl., Ex. C. Dolce failed to timely make the required payments when due under the loan documents. Compl. ¶ 18. As such, on or about January 24, 2025, PNC sent Dolce and Alberti a second letter setting forth the payoff balance and demanding payment. Compl. ¶ 19; Compl., Ex. D. Defendants have nonetheless failed to cure their defaults under the loan documents, and as of March 28, 2025, there was due and owing $122,993.11 consisting of $95,000 in unpaid principal, $27,557.57 in

accrued and unpaid interest, and $435.54 in late charges. Compl. ¶ 20. Interest is accruing on the outstanding principal balance of the line of credit at a per diem rate of $47.01 and will continue to accrue in accordance with the terms of the loan documents. *Id.* Accordingly, the full accelerated amount owed under the loan documents is immediately due and payable to PNC. Compl. ¶ 21. To date, Alberti has failed to ensure the payment and performance of Dolce's obligations under the Agreement to PNC, as required by the Guaranty, and is thus in default thereunder. Compl. ¶ 22; Compl., Ex. A. PNC retained the law firm Adams & Reese, L.L.P. to represent it in this matter. Compl. ¶ 23.

## PROCEDURAL BACKGROUND

Plaintiff filed a two-count complaint in this action on April 10, 2025, alleging a breach of agreement and breach of guaranty (the "Complaint") [ECF No. 1]. On June 25, 2025, Plaintiff filed its Returns of Non-Service as to Dolce and Alberti. [ECF Nos. 7-8]. That same day, upon Plaintiff's request, *see* ECF No. 10, Alias Summonses were issued to both Defendants. [ECF No. 11]. Plaintiff served the Alias Summonses in care of the Secretary of State on June 26, 2025. [ECF No. 12]. On or about July 9, 2025, Plaintiff sent the Notice of Filing Returns of Service to the last known addresses for Defendants. *Id.*

Defendants failed to file an answer or otherwise respond to Plaintiff's Complaint. Subsequently, on July 24, 2025, Plaintiff filed a Motion for Entry of Clerk's Default against Defendants. [ECF No. 13]. On July 25, 2025, the Clerk entered a Clerk's Default against the Defendants, *see* ECF No. 14, and the Court

entered an Order Directing the Filing of a Motion for Final Default Judgment. [ECF No. 15]. On August 25, 2025, Plaintiff filed its Motion for Entry of Final Default Judgment. [ECF No. 18]. In support of Plaintiff's Motion, Plaintiff also filed the Affidavit of Angela N. Grewa, Mot., Ex. A, and Plaintiff's Declaration, executed by Lyndsey Guggenmos, Mot., Ex. F.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "After the clerk enters a default, the Court is authorized to enter a final default judgment if the party seeking it applies for one." *Univ. of Miami v. Caneup, LLC*, No. 23-cv-23829, 2024 WL 4500790, at *3 (S.D. Fla. Oct. 16, 2024) (citing Fed. R. Civ. P. 55(b)(2)); *see also* Fed. R. Civ. P. 55(b)(2) ("In all other cases, the party must apply to the court for a default judgment."). However, "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015). "Thus, before entering a default judgment for damages, the complaint must state sufficient facts to support a substantive cause of action and include a sufficient basis for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact' as

4

set forth in the operative complaint." *Univ. of Miami*, 2024 WL 4500790 at *3 (quoting *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1298 (S.D. Fla. 2016)).

Once liability has been established, the Court must assess damages. The Court may examine affidavits submitted and, at its own discretion, conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. *See PNC BANK, N.A. v. Kool Stuff Designs, LLC*, No. 24-cv-61283, 2024 WL 4652130, at *3 (S.D. Fla. Oct. 31, 2024) (quoting Fed. R. Civ. P. 55(b)(2)).

## ANALYSIS

### A. JURISDICTION

"Before delving into the Motion for Entry of Default Final Judgment itself, we must verify that we have subject matter jurisdiction over this case, that we can exercise personal jurisdiction over the Defaulting Defendants, and that venue is proper in our District." *Eumori v. Buufan*, No. 25-cv-23426, 2026 U.S. Dist. LEXIS 3332, at *4 (S.D. Fla. Jan. 8, 2026).

#### 1. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because the diversity jurisdiction requirements are satisfied. First, the parties are diverse. Plaintiff is a national banking association with its main office located in Delaware. Compl. ¶ 1; *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) ("one would sensibly 'locate' a national bank for the very same purpose, i.e., qualification for diversity jurisdiction, in the State designated in its articles of

association as its main office"). Defendant Dolce is a Florida corporation with its principal place of business in Florida. Compl. ¶ 2. Defendant Alberti is a Florida resident with her primary residence located in Miami-Dade County. Compl. ¶ 2. Second, the amount in controversy exceeds $75,000. *See* Compl. ¶¶ 20, 24 (seeking a judgment to recover the $ $122,993.11 due and owing to Plaintiff in addition interest, costs, and attorneys' fees).

### 2. Personal Jurisdiction

This Court has personal jurisdiction over Defendant Dolce inasmuch as Defendant's principal place of business is in Miami-Dade County, Florida, which is within the jurisdiction of the Southern District of Florida. *See* Compl. ¶ 2; *see, e.g., Alcala v. Michael Dawkins Grp.*, No. 23-cv-24789, 2024 U.S. Dist. LEXIS 99055, at *3 (S.D. Fla. June 4, 2024) ("And, because [Defendant] is a Florida Profit Corporation with headquarters in Miami-Dade County, Florida, doing business in Miami, Florida, [] we're also satisfied that we have personal jurisdiction over the Defendant."). Further, pursuant to Dolce's Articles of Incorporation, Dolce was incorporated in Miami-Dade County, Florida, making Dolce a "citizen of its state of incorporation," Florida. *DO Rests., Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013); Mot., Ex. B (Dolce Articles of Incorporation and 2025 Annual Report). Likewise, this Court has personal jurisdiction over Defendant Alberti as she is an individual domiciled in Miami-Dade County. To be a citizen of a state, a natural person must be both a citizen of the United States and a domiciliary of a state. *Las Vistas, S.A. v. Petersen*, 788 F. Supp. 1202 (M.D. Fla. 1991) (citing *Willis v. Westin*

6

*Hotel Co.*, 651 F. Supp. 598 (S.D.N.Y.1986)). The address found in Miami-Dade County Official Records in a Notice of Lis Pendens for Alberti is a Miami address. Mot., Ex. C.

The service of process components for this Court to have personal jurisdiction over Defendants are also satisfied. PNC properly effectuated substitute service on Dolce and Alberti pursuant to Fla. Stat. §§ 48.081 and 48.161. As a Florida corporation, Dolce must be served pursuant to Fla. Stat. § 48.081, which permits a domestic corporation to be "served with process required or authorized by law by service on its registered agent designated by the corporation." Fla. Stat. § 48.081(2). If service cannot be made on the registered agent "after one good faith attempt", then process can be served on certain corporate officers, or "[a]ny person listed publicly by the domestic corporation . . . on its latest annual report." *Id.* §§48.081(3), (3)(a)-(b). Alberti is the only person listed publicly on Dolce's latest annual report and is Dolce's registered agent. Mot. at 7-8; Mot., Ex. B.  Plaintiff attempted service five times at the address designated by the Defendant corporation as the address of its registered agent, its principal place of business, and its mailing address. Mot., Ex. C.

If the plaintiff can serve neither the corporation's registered agent nor a person publicly listed by the corporation on its latest annual report, a plaintiff may effectuate service of process on the Florida Secretary of State. *See* Fla. Stat. §48.081(4) (a)-(b). Finally, if "after due diligence" service cannot be completed and "[t]he only person listed publicly by the domestic corporation … on its latest annual report, is also the registered agent on whom service was attempted" then "the process may be served as

provided in s. 48.161 on the Secretary of State as an agent of the domestic corporation." *Id.* PNC engaged in a comprehensive search of public records, *see* Mot. at 13, and utilized the information obtained by investigation to make thirteen (13) attempts to serve Dolce and Alberti at a variety of addresses. Accordingly, PNC satisfied Fla. Stat. § 48.161's due diligence requirement and was thus entitled to serve Alberti through the Secretary of State. *Coastal Capital Venture, LLC v. Integrity Staffing Solutions, Inc.,* 153 So.3d 283, 285 (Fla. 2d DCA 2014) (personal service is obtained through reasonable diligence where "the complainant reasonably employed knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable him to effect personal service on the defendant") (citation omitted).

PNC satisfied all subsequent mailing and notice requirements prescribed by Fla. Stat. § 48.161. On the same day, the Florida Secretary of State accepted service of process for Dolce and Alberti, PNC sent copies of the acceptance of service with its Notice of Filing Returns of Service to Defendants. Mot., Ex. D. On August 1, 2025, PNC sent, via certified mail, return receipt requested, a true copy of PNC's Notice of Filing Returns of Service, the Secretary of State's letter accepting service of process, the Complaint in this cause with exhibits, and the Alias Summons to Dolce and Alberti. Mot. at 15; Mot., Ex. D. As required by Fla. Stat. § 48.161(3), PNC filed its Affidavit of Compliance on August 5, 2024, which is within 40 days of the date that service was made on, and accepted by, the Secretary of State. Mot.at 16, Mot., Ex. D.

### 3. Venue

Finally, venue is proper in this district because this is the judicial district in which Dolce maintains its principal place of business. 28 U.S.C. §§ 1391(b)(1) & (c)(2).

## B. <u>LIABILITY</u>

Plaintiff is seeking final default judgment against Defendants' breach of contract and breach of guaranty. Compl. ¶¶ 26-38. The contract at issue is governed by Delaware law, thus Delaware law controls here. Compl., Ex. B; *Travelers Prop. Cas. Co. v. Kan. City Landsmen, L.L.C.*, 592 F. App'x 876, 881 (11th Cir. 2015) (explaining that in a diversity action, a federal court must apply the choice-of-law rules of the forum state).

### 1. Breach of Contract

Under Delaware law, to sustain a claim for breach of contract, the plaintiff must prove (1) the existence of a contract, whether express or implied; (2) breach of one or more of the contract's obligations; and (3) damages resulting from the breach. *Geico Gen. Ins. Co. v. Green*, 308 A.3d 132, 140 (Del. 2022). Through the entry of the default against the Defendants, the well-pleaded factual allegations of the Complaint are taken as true. *PNC Bank, N.A. v. Bldg. Founds. Therapy Servs.*, No. 25-cv-23600, 2026 U.S. Dist. LEXIS 25185, at *18 (S.D. Fla. Jan. 23, 2026). Thus, PNC has established that (1) a contract exists between PNC and Dolce, as evidenced by the Agreement, Compl. ¶¶ 8, 10, 11; (2) the contract was breached by Dolce's failure to make timely payments under the Agreement, Compl. ¶¶ 14-16; and (3) as a direct and proximate cause of Dolce's breach and default of the Agreement, PNC has

suffered damages, and Dolce owes to PNC the full amount of the outstanding unpaid Agreement, including principal, interest, attorney's fees and costs, and any and all sums hereto and hereinafter expended or to be expended by PNC pursuant to the terms of the Agreement. Compl. ¶¶ 14-16; 20-21; 23-25. As pertains to this instant action, Plaintiff has established through its pleadings, and through the filing of Plaintiff's Declaration in Support of Entry of Final Default Judgment, the necessary elements for its breach of contract/agreement claim. *See Geico,* 308 A.3d at 140. Plaintiff's Declaration provides that as of August 25, 2025, there was due and owing $129,968.38, consisting of $95,000.00 in unpaid principal, $34,532.84 in accrued and unpaid interest, and $435.54 in late charges. Mot., Ex. E. Additionally, interest is currently accruing on the outstanding principal balance of the line of credit and will continue to accrue in accordance with the terms of the loan documents. Mot., Ex. E.

**2. Breach of Guaranty**

Under Delaware law, "a contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that on a third person who is liable in the first instance" *Falco v. Alpha Affiliates, Inc.*, No. Civ A. 97-494, 1997 WL 782011, at *5 (D. Del. Dec. 10, 1997) (citing *Jones Motor Co. v. Teledyne, Inc.*, 690 F. Supp. 310, 313 (D. Del. 1988)). Therefore, the guaranty is a separate contract involving duties and responsibilities that are distinct from the basic contract to which it is collateral. *Id.* (citing *Jones*, 690 F. Supp. at 313, n.4). As stated above, the elements for breach of contract under Delaware Law are a) the existence of a contract; b) the breach of an obligation

10

imposed by that contract; and c) resulting damages to the plaintiff. *Geico*, 308 A.3d at 140. Through the entry of the default against the Defendants, the well-pleaded factual allegations of the Complaint are taken as true. *See Bldg. Founds. Therapy Servs.*, 2026 U.S. Dist. LEXIS 25185, at *18. Thus, PNC has established (1) the existence of a contract between Alberti and PNC (the Guaranty), whereby Alberti committed to jointly and severally guaranty the obligations of Dolce to PNC Compl., ¶¶ 8-9; (2) Alberti has breached the contract by defaulting under the terms of the Guaranty by failing to ensure the prompt payment and performance of Dolce's obligations under the Agreement, as required by the Guaranty; Compl. ¶ 12; and (3) as a direct and proximate result of Alberti's default, PNC has suffered monetary damages, and there is now due and owing from Alberti the full amount of outstanding unpaid indebtedness under the Agreement including principal, interest, attorneys' fees and costs, and for such further relief that is just and proper. Compl. ¶ 20-24].

## C. Attorney's Fees and Costs

PNC seeks $3,434.00 in attorneys' fees and $1,334.00 in costs. When a party's claim for attorneys' fees sounds in state law and reaches federal court by way of federal diversity jurisdiction, courts should apply the substantive law of the forum state. *See Trans Coastal Roofing Co., v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002); *see also PNC Bank, N.A. v. Pro. Nurses Homecare Inc.*, No. 25-cv-80723, 2026 U.S. Dist. LEXIS 3328, at *10 n.2 (S.D. Fla. Jan. 8, 2026) (applying Florida law to determine entitlement to attorneys' fees where Florida was the forum state despite applying Delaware law to breach of contract claims). Therefore, PNC's claim for

attorneys' fees is governed by Florida law.

Under Florida law, the prevailing party in a breach of contract action is entitled to attorneys' fees and costs. *Prior v. Neurospine Inst. LLC*, No. 23-cv-60676-MD, 2025 U.S. Dist. LEXIS 189680, at *5 (S.D. Fla. July 16, 2025); *see Moritz v. Hoyt Enterprises, Inc.*, 604 So. 2d 807, 810 (Fla. 1992).   Additionally, the parties' Agreement provides that PNC is entitled to attorneys' fees and costs upon breach. *See* Compl. ¶ 24; Compl., Ex. B ¶ 18. However, before granting such an award to a prevailing party, the court must assess whether the amount of attorney's fees requested is reasonable. *See Corey Sipkin Photography LLC v. El Extrabase Inc.*, No. 24-cv-23887, 2025 U.S. Dist. LEXIS 94898, at *7 (S.D. Fla. May 19, 2025).

In support of its requests for fees and costs, PNC submitted both Plaintiff's Declaration, Mot., Ex. F, and the Affidavit of Reasonableness of Attorneys' Fees and Costs, Mot. Ex. G. Plaintiff's submissions provided the Court billing records and other materials that speak to the factors the Court must consider in its reasonableness determination, such as "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved . . . the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)). Subsequently, the Court finds that the attorneys' fees and costs sought by Plaintiff are reasonable.

## CONCLUSION

For the foregoing reasons, the Court **RECCOMENDS** that Plaintiff PNC Bank, N.A.'s Motion for Entry of Final Default Judgment be **GRANTED** and that final default judgment be entered against Defendants, Dolce Marketing Corp. and Nayvi Alberti. The Court specifically recommends that the District Court:

(i)    Enter Final Default Judgment against Defendants, jointly and severally, in the amount of $129,968.38, plus additional interest accruing between August 25, 2025, and the date of the judgment; plus, an award of attorneys' fees in the amount of $3,434.00, plus an award of costs in the amount of $1,334.00.

(ii)    Require Defendants, Dolce Marketing Corp. and Nayvi Alberti, to complete, under oath, Form 1.977, Florida Rules of Civil Procedure, Fact Information Sheets and return those to counsel for Plaintiff within forty-five (45) days; and

(iii)    Retain jurisdiction to enter such further relief this Court deems just and proper.

## OBJECTIONS

Within seven (7) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations. *See* Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 7 days after being served with a copy." *See id.* A party's failure to serve and file specific objections to the proposed findings

and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; S.D. Fla. Mag. R. 4(a).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 12th day of February, 2026.

**ENJOLIQUÉ A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record